IN THE MATTER OF PETITION FOR REVIEW OF OPINION
NO. 569 OF THE ADVISORY COMMITTEE ON
PROFESSIONAL ETHICS.

Argued April 28, 1986—Decided July 9, 1986.

*Michael R. Clancy*, Deputy Attorney General, argued the cause for appellant, Attorney General of New Jersey (*W. Cary Edwards, Jr.*, Attorney General, attorney; *Michael R. Cole*, former First Assistant Attorney General, of counsel).

*James Dorment, Jr.,* argued the cause for respondent, Advisory Committee on Professional Ethics (*Schumann, Hession, Kennelly & Dorment,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal concerns the validity and the scope of *Opinion* 569, 116 *N.J.L.J.* 2576 (1985), issued by the Advisory Committee on Professional Ethics (ACPE or Committee). Specifically, *Opinion* 569 involves the question whether a former deputy attorney general who represented various State professional and occupational licensing boards may represent a licensee who faces possible disciplinary action by one of those boards as the result of an investigation begun while the deputy attorney general was still employed by the State, but of which the deputy attorney general had no knowledge.

The Committee found that the "deputy attorney general should be allowed to represent a private client in connection with an investigation which began while the attorney was in government service but with which he had no connection whatever, subject to [a] six-month period of personal disqualification." It found the situation analogous to the six-month period of personal disqualification that we imposed upon former assistant county prosecutors who wished to represent clients in criminal proceedings in the county in which they served. *In re Advisory Opinion No. 361,* 77 *N.J.* 199 (1978). The Committee believed that a period of personal disqualification was necessary in both instances in order to avoid the appearance of impropriety. *Opinion* 569, 116 *N.J.L.J.* at 257. Pursuant to Rule 1:19–8(f), the Attorney General petitioned this Court to review the opinion. We granted that petition. 102 *N.J.* 381 (1985).

## I

The ethical constraints on a lawyer who leaves government service are intended to be straightforward. *In re Biederman,*

63 *N.J.* 396 (1973) (citing ABA Formal Opinion 134 (1935)). The constraints on former government lawyers follow directly from this Court's General Rules of Professional Conduct [RPC], which apply to both private and public attorneys:

(A) A lawyer who has represented a client in a matter shall not thereafter:

(1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client; or

(2) use information relating to the representation to the disadvantage of the former client except as RPC 1.6 would permit with respect to a client or when the information has become generally known. [*RPC* 1.9.][1]

Rule of Professional Conduct 1.11 is the specific Rule governing an attorney's successive government and private employment. Rule 1.11(a) specifically recognizes that a former government attorney shall not represent a private client in connection with a matter (i) in which the lawyer participated personally and substantially as a public officer or employee, (ii) about which the lawyer acquired knowledge or confidential information as a public officer or employee, or (iii) for which the lawyer had substantial responsibility as a public officer or employee.[2]

---

[1]We recognize that under an exception to the consent-waiver rule a public entity as a government client cannot consent, even after full disclosure, to representation by its former attorney of another client whose interests are adverse to the interests of the public entity. Rule 1.7(a)(2).

[2]Rule of Professional Conduct 1.11(a) follows from former Disciplinary Rule 9–101(B) and from pre-existing decisions of this Court. Under pre-existing New Jersey law, a former government employee was barred from representing a private client in connection with a matter if (1) the lawyer substantially or personally participated in the matter while in government employment, (2) acquired actual knowledge of the matter, or (3) had substantial authority for it as a public officer or employee. *Ross v. Canino*, 93 *N.J.* 4024 (1983); *In re Advisory Opinion No. 361*, 77 *N.J.* 199 (1978). In those situations, the disqualification would extend to the firm with which the lawyer was associated. In other situations, where no actual conflict existed, disqualification of a former government employee did not extend to the firm with which the lawyer was associated, provided the lawyer was properly screened and appropriate notice was given to the agency.

It is undisputed that the inquiring lawyer in this case had no contact whatever with the investigation involved in his or her inquiry.[3] Thus, Rule 1.11(a) is not at issue. Instead, the case turns on Rule 1.11(b), which reads in pertinent part:

> An appearance of impropriety may arise from a lawyer representing a private client in connection with a matter that relates to the lawyer's former employment as a public officer or employee even if the lawyer did not personally and substantially participate in it, have actual knowledge of it, or substantial responsibility for it. In such an event, the lawyer may not represent a private client * * *.

Accordingly, in the absence of an actual or attributed conflict we must determine whether an appearance of impropriety is created by a former deputy attorney general's representation of a private party who is the subject of a disciplinary proceeding before a state agency that the deputy had represented, and in which the investigation of the deputy's client had begun during his or her employment by that agency. For the following reasons, we hold that it does create such an appearance.

## II

■ This Court has had a long history of requiring attorneys to avoid even the appearance of impropriety.[4] See *Ross v.*

---

[3]The inquirer stressed to the Advisory Committee on Professional Ethics that he or she had "no contact whatever with the investigation, informing us that such matters are handled by the Enforcement Bureau of the Division of Consumer Affairs, and not by the Division of Law and Public Safety." The Committee was "told that while a deputy attorney general assigned to represent a particular board might or might not participate in a given investigation as conditions warrant, this investigation was completely outside the scope of the inquirer's participation, knowledge and responsibility."

[4]The new Rules of Professional Conduct continue to stress the importance of the appearance doctrine. In addition to Rule 1.11(b)—the rule immediately relevant to the present case—the appearance of impropriety standard may be found directly in Rule 1.7(c)(2) (general rule about conflicts of interest) and indirectly in a host of provisions to which Rule 1.7 is made applicable. *See, e.g.,* Rule 1.9(b) (conflicts of interest—former client); Rule 1.13(e) (organization as client); 3.7(b) (lawyer as witness); *see also* Rule 1.7 comment, Rule 1.11 comment.

*Canino*, 93 *N.J.* 402, 409 (1983); *In re Opinion No. 415*, 81 *N.J.* 318, 323 (1979); *In re Cipriano*, 68 *N.J.* 398 (1975). This history reflects the principle that an *actual* conflict of interest or ethical violation is not always necessary to disqualify an attorney when he acts as an adversary against a former or existing client. *See, e.g., State v. Rizzo*, 69 *N.J.* 28, 30 (1975) ("a lawyer must avoid even the appearance of impropriety ... to the end that the image of disinterested justice is not impoverished or tainted"); *State v. Galati*, 64 *N.J.* 572, 576 (1974) ("Thus we must note that in matters of ethics and professional probity, the cause and effect impact upon the public consciousness is almost, perhaps quite, as important as the actual fact.") The "appearance" doctrine is intended not to prevent any actual conflicts of interest but to bolster the public's confidence in the integrity of the legal profession. *In re Cipriano, supra*, 68 *N.J.* at 398; *In re Opinion No. 415, supra*, 81 *N.J.* at 323. Nevertheless, we have held that the "appearance" of impropriety must be something more than a fanciful possibility. It must have some reasonable basis. *Higgins v. Advisory Comm. on Professional Ethics*, 73 *N.J.* 123 (1977).

When representation of public bodies is involved, this Court has also recognized that "the appearance of impropriety assumes an added dimension." *In Matter Of Petition for Review of Opinion 552* (1986); *In re Opinion No. 415, supra*, 81 *N.J.* at 324. Precisely because government attorneys are invested with the public trust and because they are more visible to the public, their conduct must be even more circumspect than the private attorney. *Id.* As commentators have observed:

[P]otentially improper conduct on the part of a government employee is more likely to be scrutinized by the public than that of a private attorney. This is not

---

New Jersey remains one of the few states to adhere to the "appearance of impropriety" rule. We have previously noted our disagreement with the ABA's narrower "approach to disqualification." *In re Advisory Opinion 361, supra*, 77 *N.J.* at 206–07; *see also Perillo v. Advisory Committee on Professional Ethics*, 83 *N.J.* 366, 374 n. 1 (1980) (discussing Kutak Commission's criticism of "appearance of impropriety" rule).

surprising, since the public is most concerned with the potential misuse of information and power gained when the public itself, rather than a private party, is suffering the consequences. Thus, an appearance of impropriety on the part of a government attorney will inevitably harm not only the individual attorney, but also the entire system of government that allows such improprieties to take place. A perceived impropriety by the former is inevitably seen as a fault of both.

[*Developments in the Law—Conflicts of Interest,* 94 *Harv. L. Rev.* 1244, 1416 (1981) (citation omitted).]

■ It is therefore the viewpoint of the public from which this Court has chosen to judge whether particular conduct would constitute the appearance of impropriety. "We must view the conduct as an informed and concerned private citizen and judge whether the reputation of the Bar would be lowered if the conduct were permitted." *In re Opinion No. 415, supra,* 81 *N.J.* at 325; *Perillo v. Advisory Committee on Professional Ethics,* 83 *N.J.* 366, 373 (1980). Confidence in government depends to a large extent on confidence in the honesty and integrity of its employees.

In this case, there was an adequate factual basis for an informed citizen to conclude that there would be a "high risk" of impropriety if the deputy attorney general represented the licensee before the members of the disciplinary board to which he served as counsel. The Board's investigation into the potential client began while the attorney was in the Board's employ. We accept the attorney's representation that because of the structure of the Attorney General's Office, he or she had absolutely no contact with the individuals who were actually responsible for gathering the information that served as the basis for that investigation. However, we are far less certain that the average citizen, seeing the Board's counsel at the opposite table, would perceive any distinctions or appreciate the bureaucratic structuring of responsibility.

III

■ The Attorney General's major contention is that the scope of *Opinion* 569 is so broad that it bars *all* former deputy

attorneys general, regardless of the nature of their government duties and the type of private legal service they subsequently wish to provide, from appearing for six months before the agencies they represented while in state service. We do not agree that the Opinion has the breadth that the Attorney General seeks to give it.

The *Opinion* is limited to the circumstances under which a former deputy attorney general can properly counsel a private party who is the subject of a *disciplinary* proceeding before a state agency that the deputy attorney general had represented and in which the investigation of the deputy attorney general's client had begun during his or her employment by that agency.[5] This is all the *Opinion* holds. It does not, nor was it meant to, adopt a *per se* rule applicable across the board to all former deputy attorneys general providing civil representation to state agencies. Such a blanket rule for all former deputy attorneys general was not addressed in the inquiry nor in the opinion.

The *Opinion* applies only to former deputy attorneys general representing a client in a disciplinary action. Therefore, the ACPE's reliance upon *Opinion* 361 is well placed. In both opinions, the former government attorney was the legal representative of a client facing punitive action before a government body that the attorney had formerly represented. While a disciplinary proceeding does not involve the possible loss of liberty as does a criminal activity, such a proceeding does involve the possible loss of a liberty interest, one's livelihood. The policy considerations that led us to approve the six-month disqualification rule in criminal matters in *Opinion* 361 are

---

[5]The opinion is in answer to the following specific inquiry:

The question posed for the Advisory Committee is whether a former deputy attorney general *who represented the State's professional and occupational licensing boards* may represent a licensee *who is the subject of a pending or potential disciplinary action by a licensing board* where the investigation of the licensee began while the deputy attorney general was employed by the State but where he had no knowledge of the investigation. (Emphasis added).

applicable to the six-month disqualification rule imposed in disciplinary matters in *Opinion* 569. An informed citizen rightly is more concerned about the representation of a client by a former government attorney in a criminal or disciplinary matter than in a civil matter. The Attorney General himself, as a matter of policy, recognizes the validity of such a rule in criminal matters by imposing a six-month disqualification upon deputy attorneys general in the Division of Criminal Justice from handling certain criminal defense work following the termination of their state service.[6]

■ For all these reasons we find in this case that it is appropriate to limit the inquirer, a former deputy attorney general, from representing a licensee in a disciplinary proceeding before the Board that the deputy had represented and that had begun an investigation into the licensee before he or she had left its employ. We impose this limitation only upon the individual attorney, not the attorney's firm, and only for a six-month period from the date of the termination of his or her employment.

We have intentionally kept the period of disqualification to a minimum because we recognize that there are other important policies that we must consider. Specifically, the Attorney Gen-

---

[6]The federal government imposes similar restrictions upon its former employees. There is a lifetime prohibition on former employees acting as representatives for anyone other than the government in matters in which they participated *personally* and *substantially* while employed by the government. 18 *U.S.C.* 207(a). There is a two-year limitation on former employees representing a party in a formal or informal appearance before the United States, or in attempting to influence a particular matter in which the United States is a party or has a substantial interest, and that was *actually pending* under the person's *official responsibility* within a period of one-year prior to the termination of such responsibility. 18 *U.S.C.* 207(b). Finally, there is a one-year period of disqualification upon senior employees representing any party or attempting to influence the employee's former agency in connection with *any* matter, *whether or not involving a specific party,* that is pending before the agency or in which the agency has a direct and substantial interest. 18 *U.S.C.* 207(c). This last provision is intended to avoid the appearance of impropriety.

eral expresses a valid concern over the effect that a period of post-employment disqualification will have upon his ability to recruit talented young attorneys to accept a government position. He already suffers the disadvantage of being able to offer them far less in salary than private law firms. We agree with Judge Irving Kaufman of the U.S. Court of Appeals for the Second Circuit, who expressed his concern almost thirty years ago on this same issue:

> If the government service will tend to sterilize an attorney in too large an area of law for too long a time, or will prevent him from engaging in the practice of a technical specialty which he has devoted years in acquiring, and if that sterilization will spread to the firm with which he becomes associated, the sacrifice of entering government service will be too great for most men to make. [Kaufman, "The Former Government Attorney and the Canons of Professional Ethics," 70 *Harv.L.Rev.* 657, 668 (1957).]

We recognize that government has a legitimate need to attract well-qualified attorneys and that by doing so the public is greatly benefitted. In fact, the public's perception of the legal profession may in fact be enhanced by not imposing unduly long periods of disqualification upon a former government attorney. *Id.* As Judge Kaufman wrote:

> The appearance-of-evil doctrine is based on the desire to maintain a high regard for the legal profession in the public mind. This policy, I believe, will also be better served by not transferring the inferences applied to the private attorney to the government attorney. First, if the Government's efforts to recruit able lawyers are hindered by restrictive interpretations given to the Canons of Professional Ethics, it will reflect adversely on the entire bar and its public-service traditions. Second, when an attorney has acquired a knowledge of government procedure and an understanding of the Government's viewpoint through employment with it, he will be of greater value to future private clients. This should be encouraged rather than discouraged. Third, since most attorneys in certain specialized technical areas of the law gained their initial experience with some government agency, an unrealistic application of the various disqualifying inferences might sterilize so many lawyers in those fields that it would be difficult for a litigant to obtain proper counsel. [*Id.*]

We therefore conclude that the informed citizen would not perceive any evil or have any less faith in the legal profession if a former government attorney, who had absolutely no knowledge of an investigation of a potential client, is allowed to represent that client before a licensing board that the attorney

had previously counseled, subject to a six-month period of disqualification.

Accordingly, *Opinion* 569 of the Advisory Committee on Professional Ethics is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIF-FORD, HANDLER, POLLOCK, O'HERN and STEIN–6.

*For reversal*—None.