260 N.J. Super. 491 (1992)
616 A.2d 1345
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
PAUL E. SANDERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 4, 1992.
Decided December 2, 1992.
*492 Before Judges MICHELS, BAIME and WALLACE.
Zulima V. Farber, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the brief).
*493 Robert J. Del Tufo, Attorney General, attorney for respondent (Nancy A. Hulett, Deputy Attorney General, of counsel and on the letter-brief).
The opinion of the court was delivered by BAIME, J.A.D.
This appeal presents questions concerning the scope of an attorney's duty owed to a former client in a criminal case. Over defendant's vigorous objection, the attorney who represented him in prior bail proceedings was permitted to defend his codefendant at their joint trial where their defenses were mutually antagonistic. Both defendants were convicted. We hold that defendant's former lawyer should have been disqualified from representing the codefendant. Under these circumstances, we need not inquire as to whether defendant was specifically prejudiced by the attorney's conflict of interest. Instead, prejudice will be presumed. We reverse.

I.
On July 25, 1989, Detective James Lynam of the Palisades Interstate Parkway Police Department was on routine patrol when he noticed an automobile with a defective license plate light being driven in an erratic fashion. After activating his overhead lights, the officer observed both the front and rear passengers lean forward in a furtive manner. Despite the detective's order to remain in the automobile, the driver, Victor Andrews, exited the vehicle and volunteered that his license had been suspended. The front passenger, Granville Dehaney, then attempted to alight from the car, speaking in a rambling and excited manner. Both he and the rear passenger, defendant Paul Sanders, were removed from the automobile. Illuminating the right rear passenger area with a flashlight, the detective observed a plastic bag containing a white powdery substance in close proximity to where defendant had been seated. It is undisputed that the bag, which was confiscated by the officer, contained a large quantity of cocaine. An additional bag containing *494 cocaine was retrieved from Dehaney after he attempted to discard it.
All three individuals were indicted for second degree possession of cocaine with intent to distribute (N.J.S.A. 2C:35-5a(1); N.J.S.A. 2C:35-5b(2)) and third degree possession of cocaine (N.J.S.A. 2C:35-10a(1)) and were tried jointly. We need not describe in detail the defenses offered by the defendants at trial. Suffice it to say, the defenses were mutually antagonistic, each blaming the other for the presence of cocaine in the car. Sanders testified that he was invited to accompany Andrews who was driving Dehaney to New York City. While in the City, Andrews and Dehaney allegedly exited the automobile, leaving defendant in the rear seat, and returned after briefly conversing with an Hispanic male. According to defendant, he first realized drugs were in the car when Andrews and Dehaney attempted to conceal the bag after they noticed they were being pursued by the police. Andrews' testimony was substantially similar, except he claimed that it was defendant and Dehaney who exited the automobile and later returned with drugs. Dehaney's account was more elaborate. While he conceded that he purchased a small amount of cocaine for his own use, he claimed that Sanders was the instigator, inquiring where he could buy drugs. Dehaney testified that defendant purchased a large quantity of cocaine for $1,400 and that this was the substance found by the police after Andrews' car had been stopped.
All three defendants were convicted and sentenced on the count charging possession of cocaine with intent to distribute. Each defendant filed a separate appeal, raising different arguments. We deal here only with defendant Sanders' claim that the trial court erred in permitting the attorney who represented him in prior bail hearings to serve as Andrews' trial counsel.

II.
Prior to trial, defendant's trial counsel, a private attorney assigned by the Public Defender's Office, moved to disqualify *495 Andrews' lawyer, Wakely Paul, from participating in the case. In support of his application, defendant noted that Paul had previously been assigned to represent him and had filed and argued a motion to reduce bail on his behalf. Defendant contended that he engaged in discussions with Paul concerning the circumstances surrounding his arrest. Because his position was adverse to that of Andrews, defendant expressed concern that Paul would use against him confidential information that was disclosed in the course of the attorney-client relationship. In response, Paul conceded that he had represented defendant in prior bail hearings and had interviewed him for that purpose. However, Paul had no specific recollection of what was actually disclosed to him in his consultations with defendant. The attorney added that he would not use confidential information against defendant in the event he were to recall it during the course of the trial. Based upon these representations, the trial judge denied defendant's motion. We add that Paul vigorously cross-examined defendant and asserted in his summation that the cocaine found in the automobile belonged to Sanders and not Andrews.
It is against this factual backdrop that we consider defendant's claim he was denied the effective assistance of counsel. While we agree the issue presented has Sixth Amendment implications, we find no basis in the record to support defendant's argument that his attorney was rendered ineffective by reason of Paul's conflict of interest. Instead, the essential question is whether defendant's rights were compromised by the trial court's refusal to disqualify Paul from representing Andrews, an adverse party.
It is axiomatic that both the Federal and State Constitutions afford an accused the right to have the untrammelled and unimpaired assistance of counsel in his defense. See Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680, 699 (1942); State v. Bellucci, 81 N.J. 531, 538, 410 A.2d 666 (1980); State v. Land, 73 N.J. 24, 29-30, 372 A.2d 297 (1977); *496 State v. Green, 129 N.J. Super. 157, 161, 322 A.2d 495 (App.Div. 1974); State v. Ebinger, 97 N.J. Super. 23, 27, 234 A.2d 233 (App.Div. 1967). These constitutional prescriptions mandate that a defendant should have nothing less than the undivided loyalty of his attorney. Glasser v. United States, 315 U.S. at 70, 62 S.Ct. at 465, 86 L.Ed. at 699; State v. Bellucci, 81 N.J. at 538, 410 A.2d 666; State v. Land, 73 N.J. at 29-30, 372 A.2d 297. In an unbroken line of decisions, both the Federal and State courts have said that the attorney's position as an advocate for his client should not be compromised before, during or after trial. Von Moltke v. Gillies, 332 U.S. 708, 720-21, 68 S.Ct. 316, 322, 92 L.Ed. 309, 319 (1947); Williams v. Kaiser, 323 U.S. 471, 475, 65 S.Ct. 363, 366, 89 L.Ed. 398, 402 (1945).
The importance of pretrial proceedings in criminal cases dictates that the ethical duties a lawyer owes a client attach at the outset of the relationship. State v. Bellucci, 81 N.J. at 539, 410 A.2d 666. Although the pervasive practice of plea negotiations best highlights the importance of the pretrial period, the constitutional right to bail often sets the stage for significant attorney-client consultations. Cf. State v. Johnson, 61 N.J. 351, 361 n. 6, 294 A.2d 245 (1972). Wholly apart from the defendant's obvious desire for pretrial release, studies reveal that an accused who has been detained in jail between arraignment and the final adjudication of his case is more likely to receive a criminal conviction or jail sentence than one who has been free on bail. Ibid.; see also Rankin, The Effect of Pretrial Detention, 39 N.Y.U.L.Rev. 641 (1964); Foote, The Coming Constitutional Crisis in Bail, 113 U.Pa.L.Rev. 959 (1965). The correlation between the accused's pretrial status and the severity of his sentence after conviction has been characterized as "extraordinary," the jailed defendant being two or three times more likely to receive a prison sentence. Foote, The Coming Constitutional Crisis in Bail, 113 U.Pa. L.Rev. at 960. Factors to be considered in determining pretrial bail include (1) the circumstances surrounding the offense charged and the apparent likelihood of conviction, (2) the accused's *497 criminal record, (3) his reputation and mental condition, (4) the length of his residence in the community, (5) his family relationship, (6) his employment status, (7) the identity of responsible community members who would attest to defendant's reliability, and (8) other circumstances bearing upon the risk of flight. State v. Johnson, 61 N.J. at 364-65, 294 A.2d 245. It is reasonable to assume that an attorney's interview with a client concerning bail questions encompasses inquiries into these areas. We view this circumstance as significant because the attorney's duty not to disclose a client's confidences or secrets continues even after the formal termination of that relationship. State v. Bellucci, 81 N.J. at 539, 410 A.2d 666; see also R.P.C. 1.6; Reardon v. Marlayne, Inc., 83 N.J. 460, 473, 416 A.2d 852 (1980).
The ethical obligation of every attorney to preserve the confidences and secrets of a client "is basic to the legitimate practice of law." Reardon v. Marlayne, Inc., 83 N.J. at 470, 416 A.2d 852. The sanctity of confidentiality encourages an atmosphere of trust, thus enabling the attorney to make appropriate inquiries and devise strategies to protect his client's rights. Ibid. While the attorney-client privilege was not originally embodied in either constitutional or statutory provisions, our Legislature codified it in N.J.S.A. 2A:84A-20. It also presently appears in our Rules of Evidence. Evid.R. 26. The privilege recognizes that sound legal advice or advocacy serves public ends and rests on the need to "encourage full and frank communication between attorneys and their clients." Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584, 591 (1981).
In aid of the privilege and to avoid the appearance of impropriety, "an attorney may not appear against a former client in the same litigation in which he has previously provided representation." See Reardon v. Marlayne, Inc., 83 N.J. at 470, 416 A.2d 852; State v. Rizzo, 69 N.J. 28, 350 A.2d 225 (1975); In re Cipriano, 68 N.J. 398, 346 A.2d 393 (1975); In re *498 Kushinsky, 53 N.J. 1, 247 A.2d 665 (1968); In re Braun, 49 N.J. 16, 227 A.2d 506 (1967); In re Blatt, 42 N.J. 522, 201 A.2d 715 (1964); In re Kamp, 40 N.J. 588, 194 A.2d 236 (1963). This well settled rule is now codified in R.P.C. 1.9 which provides:
(a) A lawyer who has represented a client in a matter shall not thereafter:
(1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client; or
(2) use information relating to the representation to the disadvantage of the former client except as R.P.C. 1.6 would permit with respect to a client or when the information has become generally known.
(b) The provisions of R.P.C. 1.7(c) are applicable as well to situations covered by this rule.
The history of the ethical rule is described in Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 536 A.2d 243 (1988). We need not cover ground so recently explored in that opinion. Suffice it to say, the reference to R.P.C. 1.7(c) in R.P.C. 1.9 has been construed as giving continuing vitality to the "appearance of impropriety" standard with reference to the question of whether an attorney has "represented" a client and is therefore prohibited from appearing on behalf of another whose interests are adverse to those of the former. Id. at 214, 536 A.2d 243. Thus, in determining the question of whether a party has been previously "represented" by an attorney, a court is to consider what "an ordinary knowledgeable citizen acquainted with the facts" would conclude. Id. at 215-16, 536 A.2d 243. Under that standard, "the `appearance' of impropriety must be something more than a fanciful possibility." Id. at 216, 536 A.2d 243, quoting Higgins v. Advisory Committee on Professional Ethics, 73 N.J. 123, 129, 373 A.2d 372 (1977). Rather, "[i]t must have a reasonable basis." Ibid.
Applying this principle, we are thoroughly convinced that Paul's appearance on behalf of defendant with respect to the bail motion constituted representation under the prohibition of R.P.C. 1.9. See Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. at 215-16, 536 A.2d 243. As we noted, pretrial release hearings constitute an important stage of a criminal proceeding. We *499 regard an attorney's appearance on behalf of an accused at that stage as a significant part of his representation of the client. Whatever nuances appear when R.P.C. 1.9 is applied to large law firms or governmental agencies in terms of "imputed disqualifications," R.P.C. 1.10(a); see also Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. at 217, 536 A.2d 243; Matter of Petition for Review of Opinion No. 569, 103 N.J. 325, 511 A.2d 119 (1986); Ross v. Canino, 93 N.J. 402, 461 A.2d 585 (1983); State v. Bell, 90 N.J. 163, 447 A.2d 525 (1982); State v. Bellucci, 81 N.J. at 541, 410 A.2d 666; State v. Rizzo, 69 N.J. at 30, 350 A.2d 225; State v. Galati, 64 N.J. 572, 319 A.2d 220 (1974); State v. Muniz, 260 N.J. Super. 309, 616 A.2d 926 (App.Div. 1992), the question here is crystal clear. Paul "represented" defendant in prior proceedings and then appeared as defense counsel for a party having an adverse interest. We thus conclude that Paul should have been disqualified from representing Andrews at the joint trial.

III.
The State contends that Paul's prior representation of defendant with reference to the question of bail was de minimis and no prejudice resulted from the trial court's failure to disqualify him. We reject this argument for two reasons.
First, we noted previously the relationship between a defendant's incarceration and the question of pretrial release. While we recognize that bail motions are frequently made after only a perfunctory interview, that is not invariably true. As with many other stages of criminal proceedings, the depth of an attorney's consultation with his client regarding pretrial release depends on many factors. We are not prepared to say that attorneys routinely argue bail motions without carefully reviewing their client's case.
Second, the preferable rule is that, in the absence of waiver, prejudice will be presumed to flow from a conflict of interest under R.P.C. 1.9. See State v. Bellucci, 81 N.J. at 543, 410 *500 A.2d 666; State v. Land, 73 N.J. at 35, 372 A.2d 297. We acknowledge the imprudence and wastefulness of a per se rule that automatically imputes irrebuttable prejudice from any potential conflict of interest and then mandates a reversal of a criminal conviction no matter how fairly founded. See State v. Bell, 90 N.J. 163, 175, 447 A.2d 525 (1982) (Handler, J., concurring). It has been said that "[i]n our eagerness to fashion strong rules for governing professional conflicts of interest[,]... we can easily smother our objective." Id. at 179, 447 A.2d 525. We recognize that the "polestar of the criminal justice system remains the fairness of the trial and the justness of the verdict." Ibid. This much conceded, we regard the presumption as necessary to adequately protect the "fundamental and absolute" right to effective assistance of counsel. State v. Bellucci, 81 N.J. at 543, 410 A.2d 666, quoting Glasser v. United States, 315 U.S. at 76, 62 S.Ct. at 467, 86 L.Ed. at 702. See also Holloway v. Arkansas, 435 U.S. 475, 490, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426, 438 (1978). The mischief that can arise in a conflict of interest prohibited by R.P.C. 1.9 may not be provable. To require a defendant to show with specificity exactly what confidences were used against him by his former attorney would require an extensive inquiry into a privileged area. The hearing itself would constitute an unhealthy erosion of the trust required by the attorney-client relationship.
We thus conclude the trial judge's refusal to disqualify Paul from representing Andrews was reversible error. Accordingly, the judgment of conviction is reversed and the matter is remanded for a new trial.