**G. Jeanine GREIG, Plaintiff,**

v.

**MACY'S NORTHEAST, INC., et al., Defendants.**

**Civil Action No. 95–1259 (MLP).**

United States District Court, D. New Jersey.

Feb. 19, 1998.

G. Jeanine Greig, Spring Lake Heights, NJ, pro se.

Joseph Murphy, John Devlin & Associates, East Brunswick, NJ, for Defendant, Macy's.

Mark Soifer, Horn, Goldberg, Gorney, Plachter, Weiss & Perskie, Atlantic City, NJ, for Defendants, A. Kenneth Weiner, et al.

**AMENDED MEMORANDUM OF NOVEMBER 10, 1997**

WOLFSON, United States Magistrate Judge.

Before the court is the motion by *pro se* plaintiff, G. Jeanine Greig ("Greig"), to compel the disqualification and withdrawal of the law firm, Amdur, Boyle & Maggs (the "Amdur firm"), and its attorneys from representing defendant, A. Kenneth Weiner, Esq. ("Weiner"). The court has reviewed the moving and opposition papers, and considers this matter pursuant to *Fed.R.Civ.P.* 78. For the following reasons, plaintiff's motion is granted and, further, the Amdur firm is disqualified from continuing as legal counsel for defendants, Macy's Northeast, Inc., Macy's East, Inc., Macy's Northeast Properties, Inc., and Macy's Specialty Stores, Inc., ("Macy's").

*Background*

Plaintiff retained the firm of A. Kenneth Weiner, Esq. in January of 1995, to represent her in connection with her allegedly being wrongfully targeted as a shoplifter while a public invitee in Macy's Department Store. On March 7, 1995, Weiner filed a complaint on behalf of plaintiff, asserting, *inter alia*, claims of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, against Macy's and various unnamed corporate and individual defendants. By October of 1996, after approximately a year and a half of representation, serious differences of opinion in connection with the case's value and its proper prosecution had developed between Greig and Weiner. Weiner made application to the court for leave to withdraw as counsel on October 22, 1996. After determining that the attorney-client relationship had deteriorated to the extent that it would negatively impact the firm's continued representation of Greig, the court granted counsel's motion for withdrawal. On July 7, 1997, Greig filed an amended complaint asserting a claim of mal-

practice against Weiner in connection with his representation of her in the pending action against Macy's and various unnamed defendants. The added claim against Weiner was brought in this civil rights action pursuant to the entire controversy doctrine.[1]

Weiner's malpractice carrier retained Richard A. Amdur, Esq. of the Amdur firm to represent him in this malpractice action.[2] Defendants, Macy's, were already being represented by Marguerite A. Maggs, Esq. of the Amdur firm. It is plaintiff's contention that the Amdur firm's representation of her former attorney on the malpractice claim constitutes a conflict of interest under New Jersey's Rules of Professional Conduct, that it creates an "appearance of impropriety" and that the firm's withdrawal as counsel for Weiner should be compelled. The Amdur firm contends that there is no conflict in representing two defendants against a common plaintiff and that the only attorney who owed Greig a duty of confidentiality, Weiner, is now relieved of that duty by virtue of his need to defend himself against the charges of malpractice which Greig has asserted against him.

*Discussion*

■■■ The conduct of attorneys admitted to practice before this court is governed by the American Bar Association's Rules of Professional Conduct, as revised and adopted by the New Jersey Supreme Court. Allyn Z. Lite, *New Jersey Federal Practice Rules*, 1997 Edition, Rule 6 at 35. These Rules of Professional Conduct impose a duty of confidentiality upon attorneys in connection with information obtained as a result of representation of their clients. RPC 1.6 states in pertinent part:

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out representa-

---

1. It should be noted that subsequent to Greig's joinder of her malpractice action against Weiner, the Supreme Court of New Jersey has held that the entire controversy doctrine does not require joinder of legal malpractice claims. *Olds v. Donnelly*, 150 N.J. 424, 428, 696 A.2d 633 (1997).

2. Subsequent to the entry of this court's November 10, 1997 Memorandum, counsel newly retained by Mr. Weiner moved to have the findings set forth therein amended. An order has been entered this date amending the findings.

tion, and except as stated in paragraphs (a) and (c)....

(c) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary: ...

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, or to establish a defense to a criminal charge, civil claim or disciplinary complaint against the lawyer based upon the conduct in which the client was involved; ...

The Supreme Court of New Jersey has frequently emphasized the importance of this duty of confidentiality and that it is "basic to the legitimate practice of law." *Dewey v. R.J. Reynolds Tobacco Company,* 109 N.J. 201, 217, 536 A.2d 243 (1988) (quoting *Reardon v. Marlayne,* 83 N.J. 460, 470, 416 A.2d 852 (1980)). Nonetheless, the Rules of Professional Conduct do imbue a lawyer with the discretion to avoid his duty of confidentiality where such avoidance is necessary to defend himself against charges asserted by his client. The New Jersey Supreme Court has recently reiterated that, "Those Rules state that a lawyer sued for malpractice is obligated to reveal privileged communications *only to the extent necessary* to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client." *Olds v. Donnelly,* 150 N.J. 424, 441, 696 A.2d 633 (1997) (emphasis added).

■ The Rules of Professional Conduct also prohibit a lawyer from representing a client where that representation would create an appearance of impropriety. RPC 1.7(c) states in pertinent part:

This rule shall not alter the effect of case law or ethics opinions to the effect that:

(1) in certain cases or categories of cases involving conflicts or apparent conflicts, consent to continued representation is immaterial, and

(2) in certain cases or situations creating an appearance of impropriety rather than an actual conflict, multiple representation is not permissible, that is, in those situations in which an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients.

Thus, even where there is not a direct conflict of interest, the rules prohibit representation where a knowledgeable citizen would find such representation to be imprudent. This is to protect the standing of the legal profession in the community and avoid creating an "appearance of impropriety." Further, where an attorney in a firm is prohibited from representing a client as a result of an enumerated conflict of interest, RPC 1.10 provides for the imputed disqualification of all the lawyers from that firm.

The Rules of Professional Conduct also prohibit lawyers from facilitating any other lawyer's violation of the Rules. RPC 8.4 states that, "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; ... [or to] (d) engage in conduct that is prejudicial to the administration of justice...."

## I. The Amdur firm's representation of Weiner encourages his violation of his duty of confidentiality and prejudices the fair administration of justice in contravention of RPC 8.4.

■ Here, Greig asserted a malpractice action against her former counsel, Weiner. Weiner's malpractice carrier retained representation for Weiner's defense by an attorney from the same firm who represents the defendants in the underlying action. In response to the plaintiff's claim that such representation creates a conflict, defendants' counsel asserts that the only attorney who owes Greig a duty of confidentiality is Weiner and Weiner's duty has been extinguished by the malpractice action. This analysis is disingenuous. While the unusual circumstances in the instant case are not addressed directly by the Rules of Professional Conduct, the court finds that RPC 1.6, 1.7(c) and 8.4, read together, make it clear that the representation of Greig's former counsel by the same law firm that is simultaneously representing the parties that she has sued falls within the scope of transactions which

were intended to be prohibited by the Rules of Professional Conduct.

Defense counsel concedes that Weiner owed Greig a duty of confidentiality, but its conclusion that this duty has been extinguished by Greig's act of asserting a malpractice action against Weiner is overly broad. Although RPC 1.6 does permit a lawyer to reveal information which is otherwise protected by the duty of confidentiality, this discretion is a limited one. A lawyer may only reveal such information "to the extent the lawyer reasonably believes [it] necessary to establish a claim or defense on behalf of the lawyer." RPC 1.6. Thus, the fact that Greig brought a malpractice action against Weiner does not completely absolve Weiner of any further obligation to maintain Greig's confidences. It merely permits Weiner to reveal such information as is reasonably necessary to prepare his defense. Other than the information which falls within this window, there is a continuing obligation owed by an attorney to his former client to maintain confidentiality. The court finds that implicit within this duty to maintain confidentiality is a duty by Weiner not to disclose this information to the attorneys who represent the parties in a direct adversarial relationship to Greig, in litigation in which Weiner and the Amdur firm were once adversaries.

Although Weiner does not fit the classic description of the 'side-switching attorney,'[3] analogous concerns are raised, and, therefore, it is appropriate to be guided by the reasoning set forth in cases which have addressed this problem. "At the heart of every 'side-switching attorney' case is the suspicion that by changing sides, the attorney has breached a duty of fidelity and loyalty to a former client, a client who had freely shared with the attorney secrets and confidences with the expectation that they would be disclosed to no one else." *Cardona v. General Motors Corp.*, 942 F.Supp. 968, 975 (D.N.J.

1996). Although a former client certainly has to accept the fact that these confidences will be revealed to some extent once she asserts a claim of malpractice against her former attorney, she should not be forced into a situation where these confidences are revealed to her adversaries, who are still involved in pending litigation and whose knowledge of her confidences would cause her the greatest harm. Therefore, the choice of an attorney from the Amdur firm to represent him was ill advised, and if there were any disclosures of confidential information in connection with Greig's case, such would violate the spirit of the Rules of Professional Conduct.

■ Defendants' counsel argue that they have never had any attorney-client relationship with Greig and, therefore, their representation of Weiner cannot be faulted. Again, the court finds defense counsels' analysis to be overly simplistic. RPC 8.4 states that it is attorney misconduct to knowingly assist another in violating the Rules of Professional Conduct or to engage in conduct which is "prejudicial to the administration of justice." It should have been clear to the Amdur firm, as attorneys for Macy's, that Weiner would be in danger of violating his duty of confidentiality to Greig by divulging such information to Greig's adversary. Pursuant to RPC 8.4(a), they should have abstained from assisting him in violating this duty. Further, it should have been readily apparent that revelations by Weiner of the specifics of Greig's case to the attorneys representing the defendants would be prejudicial to Greig's case and would deter the fair administration of justice. Pursuant to RPC 8.4(d), they were prohibited from engaging in such conduct. When the former attorney of a current adversarial client seeks legal representation from the firm representing parties adverse to the former client in the same litigation, ethical concerns should be apparent. Thus, the court finds that representa-

---

3. A 'side-switching' attorney is one who formerly represented a client in a matter and subsequently undertakes representation, or affiliates himself with a firm who has undertaken representation, of an adversary in a related matter. Although the classic description of a 'side-switching' attorney would involve multiple representation by one

attorney, (or a firm with which he is associated), the instant situation, which involves an attorney who formerly represented a client in a matter and then retained representation from the adversary's firm in the same matter, creates similar potential conflicts.

tion of Weiner by the attorneys who are also representing the parties against whom Weiner filed suit on behalf of plaintiff is prohibited by the Rules of Professional Conduct. In addition, the court finds that, as the Amdur firm has undertaken the representation of Weiner and, has potentially acquired confidential information from him as it relates to his representation of Greig[4], a conflict of interest has been created which compels disqualification of this firm and its attorneys from representation of Macy's. This is consistent with the holding in *Cardona v. General Motors Corp.* wherein the court held that the disqualification of a firm was proper even though the conflicted attorney had previously left the firm. 942 F.Supp. at 976.

■ Although the court has proceeded on the assumption that Ms. Greig's confidences have been revealed to the Amdur firm, the revelation of such confidences is not necessary to this decision. RPC 1.9(a)(1) prohibits an attorney from representing an interest adverse to a former client in a substantially related matter.[5] Given the unique circumstances of the instant matter, there is no case exactly on point to guide the court. However, the court finds representation in violation of RPC 1.9(a)(1) to be akin to the circumstances of the instant case. Here, Weiner, as the former attorney for Greig, was privy to his client's confidences, but, nonetheless, Weiner's malpractice carrier sought representation for Weiner from his former adversary when Greig sued Weiner in the pending litigation. Undoubtedly, had Weiner joined the Amdur firm, immediate disqualification of

the Amdur firm from representing any client in the litigation would have been mandated, regardless of whether, in fact, any confidences had been disclosed. Once it has been established that an attorney has undertaken a prohibited representation under RPC 1.9(a)(1), the New Jersey courts have applied a presumption that confidential information has been revealed.

> Where such substantially related matters are present or when a reasonable perception of impropriety exists, the court will assume that confidential information has passed between attorney and former client, notwithstanding the attorney's declarations to the contrary. The presumption of access to and knowledge of confidences may not be rebutted.

*Reardon,* 83 N.J. at 473, 416 A.2d 852. The courts have refused to permit this presumption to be rebutted for fear that the former client will be damaged by disclosure of the very information for which protection is sought. In the instant case, no one has disputed the fact that confidences were revealed. Further, an assertion that Weiner did not reveal confidences to the Amdur firm would be unavailing. "The moving party need not demonstrate that an actual breach of confidence occurred before disqualification is warranted, but 'only a showing of the possibility of such a breach by virtue of the similarity of representations.'" *Essex Chemical Corp. v. Hartford Accident and Indemnity Co.,* 975 F.Supp. 650, 1997 WL 536249 (D.N.J.1997) (quoting *In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157,

---

4. The Amdur firm would have necessarily had to interview Weiner to obtain the factual background required to file an answer to the malpractice complaint. *See Fed.R.Civ.P.* 11. The factual predicate necessary to mount a defense for Weiner would include attorney-client confidences. Indeed, nowhere does the Amdur firm assert that no such confidences have been shared. Instead, it assumes that it is immaterial because the privilege has been pierced by the bringing of the malpractice action. However, as pointed out *supra,* that is a limited waiver and it doesn't presuppose that those confidences will be shared in a pending litigation with plaintiff's adversary counsel. Moreover, the airing of privileged communications could have been dealt with here by severing the malpractice claim from the main complaint. Had Weiner wanted to protect his right to retain the counsel of his

choice, he could have made an immediate motion to sever the malpractice claim and sought to stay the action, pending the resolution of the underlying case. In that way, Weiner would have been free to retain the counsel of his choice and would have avoided violating any ethical duties to his former client. Subsequent to the issuance of the original Memorandum, Mr. Weiner has submitted an affidavit attesting that no such confidences were disclosed.

5. Substantially related matters have been interpreted broadly in New Jersey to include matters with related factual and legal issues as well as an unrelated adverse position taken in connection with a former client of twenty-years. *Kaselaan & D'Angelo Associates, Inc. v. D'Angelo,* 144 F.R.D. 235, 241 (D.N.J.1992).

162 (3d Cir.1984)). Thus, in light of the stringent enforcement of the New Jersey Rules of Professional Conduct, *Cardona*, 942 F.Supp. at 977, the court finds it appropriate to apply the presumption of RPC 1.9(a)(1) and find the possibility that Greig's confidences have been revealed to the Amdur firm. Greig certainly has established 'the possibility of such a breach by virtue of the similarity of representations' set forth in *Essex Chemical*, 975 F.Supp. 650, 1997 WL 536249 (D.N.J.1997) (quoting *In re Corn Derivatives Antitrust Litigation*, 748 F.2d at 162).

### II. The representation of Ms. Greig's former attorney by the firm currently representing her adversary creates an appearance of impropriety requiring the disqualification of defense counsel.

The court will next determine whether the representation of Weiner and Macy's by the Amdur firm creates an appearance of impropriety. The New Jersey courts have maintained a long history of requiring attorneys to avoid even the appearance of impropriety. *State v. Irizarry*, 271 N.J.Super. 577, 595–96, 639 A.2d 305 (App. Div.1994); *Petitioner for Review of Opinion No. 569*, 103 N.J. 325, 329, 511 A.2d 119 (1986). "Where there exists an appearance of impropriety in an attorney's representation of a client, the representation must cease." *State v. Needham*, 298 N.J.Super. 100, 103, 688 A.2d 1135 (1996). Under RPC 1.7(c)(2), the standard for determining the existence of an appearance of impropriety is whether an ordinary knowledgeable citizen acquainted with the facts would conclude that the multiple representation poses substantial risk of disservice to either the public interest or the interest of one of the clients. Rather than considering the perceptions of judges and lawyers, the issue of whether there is an appearance of impropriety is assessed by reference to a layman's standard. *See In the Matter of Opinion No. 653*, 132 N.J. 124, 130, 623 A.2d 241 (1993) ("Significantly, under our law the appearance of impropriety is determined not from the perspective of the attorney involved but from the public's vantage."); *Lyden v. Susser*, 1994 WL 117794, *2 (D.N.J.

1994) ("The appearance of impropriety standard is not defined by the perceptions of judges, lawyers, or other trained professionals."); *Higgins v. New Jersey Advisory Committee on Professional Ethics*, 73 N.J. 123, 129, 373 A.2d 372 (1977) ("'appearance' alone may be sufficient to present an ethical problem even though no actual impropriety exists."). The New Jersey Supreme Court has thus made clear that "[i]n the absence of an actual conflict of interest, the appearance of impropriety may be a sufficient basis to bar an attorney from representing conflicting parties." *Petition for Review of Opinion 552*, 102 N.J. 194, 507 A.2d 233 (1986). *See also Petition for Review of Opinion No. 569*, 103 N.J. 325, 330, 511 A.2d 119 (1986) ("an actual conflict of interest or ethical violation is not always necessary to disqualify an attorney when he acts as an adversary against a former or existing client.").

The purpose of the appearance of impropriety rule is not to prevent actual conflicts of interest but rather to bolster the public's confidence in the integrity of the legal profession. *In re Cipriano*, 68 N.J. 398, 403, 346 A.2d 393 (1975). The New Jersey Supreme Court has stated that "in matters of ethics and professional probity, the cause and effect impact upon the public consciousness is almost, perhaps quite, as important as the actual fact." *State v. Galati*, 64 N.J. 572, 576, 319 A.2d 220 (1974). Nevertheless, the appearance of impropriety must constitute more than a "fanciful possibility," that is, there must be some reasonable basis for the claim of apparent impropriety. *Higgins v. New Jersey Advisory Committee on Professional Ethics*, 73 N.J. 123, 129, 373 A.2d 372 (1977).

For the same reasons cited in the previous section, the court finds that an ordinary person would believe that it would be improper for the Amdur firm to continue representing Weiner and Macy's in the defense of the case brought by Greig. Given the myriad of lawyers in New Jersey who could have represented Weiner in his malpractice action, the fact that representation was sought from the Amdur firm and that the Amdur firm accepted such representation, is extremely unsettling. The court be-

lieves that based upon the record in this case, the public would find it unjust to permit Macy's defense to be conducted by attorneys who may have been privy to the confidences gained by Greig's former attorney in this action, and have, thus, gained an unfair advantage. "There are an infinite number of confidences which ... could later be exploited...." *Needham*, 298 N.J.Super. at 106, 688 A.2d 1135. By the same token, it is unlikely that the public would perceive Macy's representation as adequate, let alone zealous, if conducted by attorneys who possess knowledge which may assist in Macy's defense, but must refrain from utilizing that knowledge because it was obtained through the conflicted relationship. Further, it would appear equally unprincipled for Weiner's defense to be conducted by counsel who were constrained from fully advising themselves of the facts of the case for fear that they might be seeking protected communications from Greig which would give rise to an unfair advantage in their defense of Macy's. Thus, even if the Amdur firm believed it could take precautionary measures which would alleviate any prejudice to Macy's, Greig and Weiner, which this court has serious doubts the Amdur firm could accomplish, there is no doubt, however, that in the process the public's perception of the legal profession and the judicial process would be tarnished. Thus, in applying the appearance of impropriety standard, the court reaches the same conclusion, that disqualification is compelled.

### III. The concerns which require disqualification outweigh Weiner and Macy's right to the counsel of their choice.

Once "the court concludes that disqualification [6] is required ..., it must then weigh that conclusion against the affected client's right to counsel of his or her choice.... [I]n only the most unusual case will the client's right prevail." *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 222, 536 A.2d 243 (1988). The Supreme Court of New Jersey has stated:

We also emphasize that only in extraordinary cases should a client's right to counsel of his or her choice outweigh the need to maintain the highest standards of the profession. We cannot conceive of any situation in which the side-switching attorney or his new firm would be permitted to continue representation if ... the attorney had in fact actually represented the former client or had acquired confidential information concerning that client's affairs.

109 N.J. 201, 220, 536 A.2d 243 (1988). Although the court recognizes the rights of Mr. Weiner and Macy's to retain the counsel of their choice, that right must give way to the greater public interest of preserving the integrity of the legal profession and of the judicial process. "[W]hile defendant is entitled to retain **qualified** counsel of his own choice, he has no right to demand to be represented by an attorney **disqualified** because of an ethical requirement." *Needham*, 298 N.J.Super. at 103, 688 A.2d 1135 (emphasis in original). It is apparent that Weiner must have apprised his counsel of the confidential details of Greig's case so that he could adequately defend against her malpractice action. Therefore, the receipt by the Amdur firm of confidential information must be assumed; indeed, nowhere does the Amdur firm claim it has not been privy to such communications although subsequent to this Court's decision, Mr. Weiner's affidavit refutes that such confidential disclosures were made.

While Greig has much to lose by this continued representation, Weiner has very little to lose by being forced to find new counsel at this juncture, it still being quite early in Weiner's representation. Thus, the court will grant Greig's motion to disqualify the Amdur firm from representing Weiner. Unfortunately, this situation has also brought the propriety of the Amdur firm's representation of Macy's into question. Macy's has more to lose in having their counsel disqualified, having been represented by the Amdur firm since the suit's inception in 1995. None-

---

6. Although the *Dewey v. R.J. Reynolds Tobacco Co.* case discusses disqualification in the context of representations prohibited because of conflicts with former clients or multiple representations, the basic tenet which supports disqualification in such cases is equally applicable to the instant situation.

theless, given the prejudice which Greig will suffer if her adversaries are permitted to defend against her lawsuit after having presumably obtained confidential details of her case, the court concludes that this harsh result cannot be avoided. Not only has this firm done a disservice to the public by accepting Weiner's representation, it has not served its clients well. . Weiner's interests have not been served since the Amdur firm encouraged his violation of the ethical rules. Macy's interests have not been served since the Amdur firm's acceptance of Weiner as a client has resulted in Macy's being forced to retain new counsel. Thus, it is with great reluctance that the court must find and order that the Amdur firm is disqualified from continuing its representation of Macy's.

The affected corporate defendants shall be granted thirty (30) days to have new counsel enter an appearance on their behalf, or in the case of A. Kenneth Weiner, Esq., to have counsel enter an appearance or, alternatively, enter an appearance *pro se.*