220 N.J. Super. 340 (1987)
532 A.2d 255
TOWNSHIP OF WAYNE, PETITIONER-APPELLANT,
v.
AFSCME, COUNCIL 52, LOCAL 2192, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted September 29, 1987.
Decided October 8, 1987.
*341 Before Judges ANTELL and DEIGHAN.
Gerald L. Dorf, attorney for appellant (Lawrence Henderson and Gerald L. Dorf, on the brief).
*342 Oxfeld, Cohen, Blunda, Friedman, Levine and Brooks, attorneys for respondent (Sanford R. Oxfeld and Elaine K. Hyman, on the brief).
Robert E. Anderson, General Counsel, submitted a brief on behalf of Public Employment Relations Commission (David F. Corrigan, Deputy General Counsel, on the brief).
The opinion of the court was delivered by ANTELL, P.J.A.D.
Respondent is the collective bargaining agent with respect to wages, hours and other conditions of employment of the administrative employees of petitioner Township of Wayne. On January 10, 1985 it filed a grievance under its collective bargaining agreement with petitioner addressed to petitioner's failure to reappoint Phyllis Aaronson to her position as Deputy Township Clerk following the expiration of her four-year term on December 31, 1984. Petitioner rejected the grievance and, in accordance with Article XII, § 2, Step 4 of the Collective Bargaining Agreement, respondent submitted the grievance to binding arbitration.
On April 30, 1985 petitioner filed its petitions for a scope of negotiations determination and a unit clarification determining that the position of Deputy Township Clerk was that of a confidential employee within the meaning of the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-3(g), and therefore outside the protection of the Act, N.J.S.A. 34:13A-5.3. The scope of negotiations petition asserts that petitioner's decision not to reappoint Aaronson as Deputy Township Clerk was an exercise of its nonnegotiable managerial prerogative and therefore nonarbitrable. Petitioner now appeals from PERC's adverse determination as to both petitions.
Phyllis Aaronson was appointed Acting Deputy Clerk of the Township of Wayne in December 1972 and Deputy Clerk in January 1973. Thereafter, she served in the latter capacity until December 1984 when her four-year term expired and she *343 was not reappointed. The grievance alleges that nonreappointment was because of political reasons in violation of Article XV of the Collective Bargaining Agreement. That provision recites the following:
The TOWNSHIP agrees that there shall be no discrimination or favoritism for reasons of sex, nationality, race, religion, age or marital status, political affiliation, UNION membership or UNION activities.
In Teaneck Bd. of Educ. v. Teaneck Teachers Ass'n., 94 N.J. 9 (1983) the Supreme Court categorically stated that the "decision to hire, retain, promote, transfer, or dismiss employees" is a managerial prerogative which a public employer cannot bargain away. Id. at 16. Relying on the holding of Ridgefield Park Ed. Assn. v. Ridgefield Park Bd. of Ed., 78 N.J. 144, 160 (1978), that the "scope of arbitrability is generally coextensive with the scope of negotiability," id. at 14 it concluded that the decision of whether or not to hire "is not subject to binding arbitration." Id. at 18. The Court added that the claim of racial discrimination there put in issue could properly be referred to the Division on Civil Rights for consideration and findings.
In determining that Aaronson's nonreappointment was properly arbitrable, PERC distinguished Teaneck on two grounds: (1) whereas Teaneck only involved a school board's failure to appoint a teacher to the position of Assistant Basketball Coach, "an extra, subsidiary position," this case "involves a complete loss of employment;" (2) whereas the teacher in Teaneck could pursue his claim of racial discrimination before the Division on Civil Rights, the claim of political discrimination here asserted is not cognizable by that agency.
We disagree that these considerations were in any sense material to the Teaneck decision. Whether the nonreappointment in that case involved a partial or total failure of employment was given no consideration. The Supreme Court wrote broadly of the "decision to hire, retain, promote, transfer, or dismiss employees," id. at 16 as a managerial prerogative which could not be made the subject of binding arbitration. *344 Moreover, it specifically focused on the fact that a claim of racial discrimination had there been made but concluded that its presence did not "change the reality that the arbitrator would be reviewing the managerial decision and the agency's exercise of its functional right  not to discriminate  but to choose among qualified candidates." Id. at 17. By holding that the discrimination issue could properly be referred to the Division on Civil Rights, the Court simply recognized the existence of an announced public policy against racial discrimination and held that the mode of relief therefrom made available by the Legislature was applicable to the case before it. The finding of non-arbitrability, however, rested on the completely independent ground that the school board's decision was managerial, arrived at without regard to whether relief from the racial discrimination might or might not be sought in another forum.
Here, too, the determinant is the managerial nature of petitioner's decision not to reappoint. That Aaronson might be the victim of political discrimination does not alter the consequences of that crucial fact. It would evidence nothing more than a public nonrecognition of this species of bias as an evil to be remedied. We observe, however, that under certain circumstances the firing or nonreappointment of a public employee because of his or her political beliefs may be barred under the First and Fourteenth Amendments to the Constitution of the United States. Battaglia v. Union Cty. Welfare Bd., 88 N.J. 48, 58-62 (1981). But such relief may be secured only by appropriate judicial proceedings, not by binding arbitration.
We now consider petitioner's appeal from PERC's determination that Aaronson was not a "confidential employee." Confidential employees of a public employer are defined under N.J.S.A. 34:13A-3 as those "whose functional responsibilities or knowledge in connection with the issues involved in the collective negotiations process would make their membership in any appropriate negotiating unit incompatible with their official *345 duties." As we noted earlier, N.J.S.A. 34:13A-5.3 excludes such employees from coverage under the Act.
In concluding that Aaronson was not a confidential employee and was therefore properly included in the negotiating unit, PERC relied upon the findings and recommendations of its hearing officer. From these it appears that the Deputy Clerk in Wayne Township "substitutes for the Clerk in his absence and assumes full authority," that among the Clerk's duties is that of "recording the closed session of Council during which Council members candidly discuss strategies and objectives concerned with collective negotiations."
The hearing officer concluded that since the Clerk's "functional responsibilities provide him with access and exposure to the collective negotiations process ... the Clerk must certainly be considered a confidential employee." He also found that Aaronson had access to confidential labor relations material such as tapes containing recordings of closed sessions of the Council. However, because the record did not disclose that she had ever been privy to any actual Council discussions on labor relations, either on tape or during the closed Council sessions, he concluded that "Aaronson is lacking the element of knowledge or exposure required so as to find her to be a confidential employee." This conclusion was based, as the hearing officer stated, not upon whether in the performance of her job Aaronson had the "potential of coming in contact with confidential information," but upon the work "the employee in this particular case actually performs. A finding that an employee may have some potential involvement in the labor relations process is not sufficient to designate such an employee as confidential." We disagree that the record herein did not compel a finding that Aaronson was a confidential employee.
We have no doubt that the Deputy Clerk's functional responsibilities and knowledge touching upon collective negotiations issues make membership in the bargaining unit with which petitioner negotiates incompatible with his or her official *346 duties. Setting aside all else, PERC's finding that the Clerk is a confidential employee and that the Deputy Clerk may on occasion assume his "full authority" is enough to command this result. But more than that, we cannot disregard the innate considerations of self-interest which would tempt a Deputy Clerk to transmit confidential data, against the interest of the Township, to his or her bargaining unit when collective negotiations are in progress. That Aaronson has never exploited her position in this manner is beside the point. What is crucial is that the access to highly confidential labor relations information of the most sensitive nature provided by the position creates an intolerable presence of conflicting loyalties. In the face of the naturally compelling incentive to help the bargaining unit advance personal interests against those of petitioner, we can only conclude that membership in the bargaining unit is clearly incompatible with the official duties of a Deputy Clerk in the Township of Wayne and that the holder of that position may not enjoy the benefits of such membership.
Reversed.