926 A.2d 839

IN RE ADVISORY COMMITTEE ON PROFESSIONAL
ETHICS OPINION 705.

Argued April 5, 2007—Decided July 19, 2007.

*Jo Astrid Glading,* Acting Public Advocate, argued the cause for appellant, Department of the Public Advocate.

*R. Brian McLaughlin,* argued the cause for respondent, Advisory Committee on Professional Ethics (*Elaine D. Dietrich,* Counsel to the Administrative Director of the Courts, attorney).

*John M. Van Dalen,* argued the cause for respondent, pro se.

PER CURIAM.

In this appeal, we must determine whether a provision of the New Jersey Conflicts of Interest Law (Act), *N.J.S.A.* 52:13D–12 to –27, must yield to a conflicting Rule of Professional Conduct (RPC). Specifically, the question presented is whether attorneys formerly employed by the State are subject to *N.J.S.A.* 52:13D–17 when the Act's post-employment restrictions are more stringent than the directives of *RPC* 1.11(c).

In response to an attorney inquiry, the Advisory Committee on Professional Ethics (ACPE) concluded that, absent a decision by this Court to defer to the Legislature, *RPC* 1.11 "should prevail" over the Act's more restrictive mandates. Because *N.J.S.A.* 52:13D–17 serves a legitimate governmental purpose and does not improperly encroach on judicial interests, we defer to the Legislature in the spirit of comity and hold that attorneys formerly employed by the State must comply with both the Act and the RPCs.

## I.

*Rule of Professional Conduct* 1.11 prohibits a former government attorney from representing a private client in matters in which the lawyer, as a public employee, recently or substantially participated. *See RPC* 1.11(a)(1)-(3). However, that conflict of interest will not be imputed to the attorney's law firm if:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom, and

(2) written notice is given promptly to the appropriate government agency to enable it to ascertain compliance with the provisions of this Rule.

[*RPC* 1.11(c).]

In May 2005, in compliance with *RPC* 1.11(c)(2), attorney John M. Van Dalen, of Van Dalen Brower, L.L.C., notified the Division of Law of the Department of Law and Public Safety that he represented Scarborough Construction in a matter concerning Harbor Cove in Somers Point. Van Dalen's letter informed the Division that his partner, Stephen Brower, a former Deputy Attorney General, was screened from participation in the matter because of Brower's "responsibilities while in the Attorney General's office for legal services to the Department of Environmental Protection in connection with Harbor Cove."

Three weeks later, the Division advised Van Dalen, also a former Deputy Attorney General, that in addition to meeting the requirements of *RPC* 1.11(c)(2), his firm was also "required to comply with *N.J.S.A.* 52:13D–17," which provides that no former State employee may represent, "whether by himself [or herself] or through any partnership, firm or corporation in which he [or she] has an interest," any client other than the State in connection with a matter that the employee was "substantially and directly involved" with as a State employee. *See N.J.S.A.* 52:13D–17. Although the present conflict of interest "has proven to be moot," Van Dalen requested that the ACPE address the overlap of the Act and RPC due to the issue's "strong continuing importance to my firm and to the bar generally as the situation is likely to reoccur."

In response, the ACPE published *Opinion No. 705*, 184 *N.J.L.J.* 390 (2006). After recognizing "a direct conflict between" *N.J.S.A.* 52:13D–17 and *RPC* 1.11(c), the ACPE opined that the Court-approved RPC "should prevail." *Opinion No. 705, supra*, 184 *N.J.L.J.* at 390. The ACPE stated:

In this inquiry, the statute is more restrictive and the Court's ethics rule in *RPC* 1.11(c) is more liberal, allowing attorneys to proceed in proper cases by screening and notification. Our reading of *Winberry [v. Salisbury*, 5 *N.J.* 240, 74 *A.*2d 406, *cert. denied*, 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950)] and *Knight [v. City of Margate*, 86 *N.J.* 374, 431 *A.*2d 833 (1981)] is that the Court's ethics rule should prevail in this case, absent a decision by the Court to defer to the statute under principles of comity.

[*Opinion No. 705, supra*, 184 *N.J.L.J.* at 390.]

Pursuant to *Rule* 1:19–8, the Department of the Public Advocate petitioned this Court to review *Opinion 705*. We granted the petition. 191 *N.J.* 319, 923 *A.*2d 1097 (2006).

## II.

Observing that *N.J.S.A.* 52:13D–17 applies to all former State employees, not just attorneys, the Public Advocate contends that the Act does not regulate an "area reserved to this Court" and, therefore, does not implicate separation of powers and comity principles. Because the Legislature is entitled to establish ethical tenets for State employees, petitioner maintains that the present conflict between a legislative and judicial pronouncement should be resolved in favor of the more stringent standard, here *N.J.S.A.* 52:13D–17. According to the Public Advocate, "[t]o carve attorneys out of the Conflicts of Interest Law, which applies equally to all employees of the legislative and executive branches, would create uncertainty and unequal treatment antithetical to the Act's purpose of ensuring all employees are held to a uniform and high standard of ethical conduct that engenders the trust of the public."

Conversely, the ACPE argues that *RPC* 1.11(c) controls the present circumstances. Relying on this Court's "sweeping authority to govern [its] own house," *In re P.L. 2001, Chapter 362*, 186 *N.J.* 368, 379, 895 *A.*2d 1128 (2006), the ACPE contends that the

Court should reject the Legislature's attempt to strip away its exclusive power over attorney discipline. According to the ACPE, *RPC* 1.11(c) demonstrates this Court's recognition that, in the context of imputing a former government attorney's conflict of interest to an entire law firm, the public interest is adequately protected by adherence to the requirements of the RPCs. Therefore, the ACPE contends that *RPC* 1.11(c) should not yield to the Act.

Van Dalen agrees with the ACPE. Referencing this Court's "plenary and preemptive authority over the practice of law and attorney ethics," Van Dalen likewise asserts that *RPC* 1.11(c) trumps its conflicting statutory analogue.

## III.

Before addressing the separation of powers issue presented by this appeal, we first review the statutory provision and RPC implicated by Van Dalen's proposed representation.

## A.

"In our representative form of government, it is essential that the conduct of public officials and employees shall hold the respect and confidence of the people." *N.J.S.A.* 52:13D–12(a). In view of that maxim, and "[t]o ensure propriety and preserve public confidence," *N.J.S.A.* 52:13D–12(b), the Legislature enacted the New Jersey Conflicts of Interest Law in 1971, *L.* 1971, *c.* 182. "[A]pplicable to a wide spectrum of public officials and employees," including attorneys, *Knight, supra,* 86 *N.J.* at 391, 431 *A.*2d 833, the Act "furnishes specific standards to guide the conduct of persons serving in State government," *N.J. Executive Comm'n on Ethical Standards v. Byrne,* 238 *N.J.Super.* 84, 87, 569 *A.*2d 264 (App.Div.1990). Ultimately, the Act endeavors to "maintain the public's confidence in government and its officers and employees" by "ensur[ing] that public servants do not ... use their official positions to earn money unfairly, especially at the expense of the

public." *In re Advisory Comm. on Prof'l Ethics Opinion 621,* 128 *N.J.* 577, 581–82, 608 *A.*2d 880 (1992).

At issue here is *N.J.S.A.* 52:13D–17, which states, in pertinent part:

> No State officer or employee or special State officer or employee, subsequent to the termination of his [or her] office or employment in any State agency, shall represent, appear for, negotiate on behalf of, or provide information not generally available to members of the public or services to, or agree to represent, appear for, negotiate on behalf of, or provide information not generally available to members of the public or services to, *whether by himself [or herself] or through any partnership, firm or corporation in which he [or she] has an interest or through any partner, officer or employee thereof,* any person or party other than the State in connection with any cause, proceeding, application or other matter with respect to which such State officer or employee or special State officer or employee shall have made any investigation, rendered any ruling, given any opinion, or been otherwise substantially and directly involved at any time during the course of his [or her] office or employment.

[(Emphasis added).]

The Act defines "interest," in part, as:

> (1) the ownership or control of more than 10% of the profits or assets of a firm, association, or partnership, or more than 10% of the stock in a corporation for profit other than a professional service corporation organized under the "Professional Service Corporation Act".... The provisions of this act governing the conduct of individuals are applicable to shareholders, associates or professional employees of a professional service corporation regardless of the extent or amount of their shareholder interest in such a corporation.

[*N.J.S.A.* 52:13D–13(g).]

Willful violators are subject to a maximum of six-months imprisonment and a $1,000 fine, as well as a civil penalty "of not less than $500 nor more than $10,000." *N.J.S.A.* 52:13D–17. In short, the Act imputes the conflict of interest of a former State government employee—including an attorney—to the entire partnership, firm, or corporation in which the former employee obtains an "interest," as statutorily defined.

Applied here, Van Dalen would be precluded from representing Scarborough Construction due to Brower's prior substantial, direct involvement in the Harbor Cove matter and Brower's significant interest in the law firm.

## B.

The RPCs applicable to former government attorneys "reflect the guiding principle that a lawyer shall not represent a private client if such representation involves taking improper advantage of his or her former governmental position." *In re Opinion 621, supra,* 128 *N.J.* at 593–94, 608 *A.*2d 880. Accordingly, the RPCs constrain the representational opportunities of former government attorneys in limited circumstances.

The pre-cursor to the current version of *RPC* 1.11 "rejected the concept of screening a former government lawyer disqualified by an actual conflict arising from contact with, responsibility for, or confidential information about a matter," thereby imputing a former government attorney's conflict to all members of his or her law firm. Kevin H. Michels, New Jersey Attorney Ethics—The Law of New Jersey Lawyering 532 (2007). However, at the behest of the Pollock Commission and as part of an expansive overhaul of the RPCs, *RPC* 1.11 was amended in 2004 to permit the screening of a former government attorney to cure an actual conflict of interest. *See id.* at 545.

As currently drafted, *RPC* 1.11 prohibits a former government attorney from representing a client in three circumstances: (1) when "the lawyer participated personally and substantially as a public officer or employee"; (2) when "the lawyer had substantial responsibility as a public officer or employee"; or (3) when, within six months of the attorney's government service, the private party's interests "are materially adverse to the appropriate government agency." *RPC* 1.11(a)(1)-(3). However, law firms may cure the conflict, avoid imputation, and undertake representation of a client if: "(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom, and (2) written notice is given promptly to the appropriate government agency to enable it to ascertain compliance with the provisions of this Rule." *RPC* 1.11(c).

Applied here, and assuming Brower is not apportioned a fee, Van Dalen would be ethically permitted to represent Scarborough

Construction because Brower was screened from involvement in the Harbor Cove matter and Van Dalen complied with the notice requirement of *RPC* 1.11(c)(2).

## IV.

"[A] fundamental principle of our State government," our separation of powers principle "first appeared in substantially its present form in the New Jersey Constitution of 1844." *Commc'ns Workers of Am., AFL–CIO v. Florio,* 130 *N.J.* 439, 449, 617 *A.*2d 223 (1992). Designed to "maintain the balance between the three branches of government, preserve their respective independence and integrity, and prevent the concentration of unchecked power in the hands of one branch," *David v. Vesta Co.,* 45 *N.J.* 301, 326, 212 *A.*2d 345 (1965) (footnote and emphasis omitted), the principle is expressly enumerated in our Constitution:

The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution.

[*N.J. Const.* art. III, ¶ 1.]

That bedrock principle is one of independence and interdependence among the coordinate branches of our government. *Knight, supra,* 86 *N.J.* at 388, 431 *A.*2d 833. First, "[t]he constitutional spirit inherent in the separation of governmental powers contemplates that each branch of government will exercise fully its own powers without transgressing upon powers rightfully belonging to a cognate branch." *Ibid.* The principle guarantees that no one branch can "claim[ ] or receive[ ] inordinate power." *Brown v. Heymann,* 62 *N.J.* 1, 11, 297 *A.*2d 572 (1972). Accordingly, we refuse to tolerate any deviation from the separation of powers principle that "impairs the essential integrity of one of the great branches of government." *Massett Bldg. Co. v. Bennett,* 4 *N.J.* 53, 57, 71 *A.*2d 327 (1950).

Second, and equally important, "the doctrine requires not an absolute division of power but a cooperative accommodation

among the three branches of government." *Commc'ns Workers of Am., supra,* 130 *N.J.* at 449, 617 *A.*2d 223. "[T]he division of governmental powers implants a symbiotic relationship between the separate governmental parts so that the governmental organism will not only survive but will flourish." *Knight, supra,* 86 *N.J.* at 388, 431 *A.*2d 833. Conversely, a rigid and inflexible classification of powers would "render government unworkable." *Massett Bldg. Co., supra,* 4 *N.J.* at 57, 71 *A.*2d 327. Thus, the separation of powers principle was not intended "to create three 'watertight' governmental compartments, stifling cooperative action." *In re P.L.2001, Chapter 362, supra,* 186 *N.J.* at 379, 895 *A.*2d 1128 (quotation omitted); *see also In re Salaries for Prob. Officers of Bergen County,* 58 *N.J.* 422, 425, 278 *A.*2d 417 (1971) ("[T]he doctrine of separation of powers was never intended to create, and certainly never did create, utterly exclusive spheres of competence."). Rather, our Constitution encourages cooperation among the branches, *In re Zicarelli,* 55 *N.J.* 249, 264–65, 261 *A.*2d 129 (1970), *aff'd,* 406 *U.S.* 472, 92 *S.Ct.* 1670, 32 *L.Ed.*2d 234 (1972), and permits "some osmosis ... when the branches of government touch one another," *Knight, supra,* 86 *N.J.* at 388, 431 *A.*2d 833.

█ Our Constitution vests this Court with the authority to "make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts. The Supreme Court shall have jurisdiction over the admission to the practice of law and discipline of persons admitted." *N.J. Const.* art. VI, § 2, ¶ 3. Notwithstanding that grant of authority, "[i]n the spirit of comity," this Court has shared its jurisdiction with the Legislature and "upheld narrowly-circumscribed legislation that touches on attorney discipline." *McKeown–Brand v. Trump Castle Hotel & Casino,* 132 *N.J.* 546, 554, 556, 626 *A.*2d 425 (1993). In certain circumstances, although they "might impinge upon the Court's constitutional concerns," we have accommodated the lawful and reasonable exercise of power by the other branches of government on the practice of law. *Knight, supra,* 86 *N.J.* at 391, 431 *A.*2d 833; *see also Passaic*

*County Prob. Officers' Ass'n v. County of Passaic,* 73 *N.J.* 247, 255, 374 *A.*2d 449 (1977) ("It has . . ., since 1948, been the practice of this Court, with only occasional deviation, to accept and adopt legislative arrangements that have not in any way interfered with this Court's constitutional obligation."). Accordingly, when the actions of another branch of government implicate fields within this Court's purview, the validity of such action and this Court's "ultimate power to accept or reject such action, turn upon the legitimacy of the governmental purpose of that action and the nature and extent of its encroachment upon judicial prerogatives and interests." *Knight, supra,* 86 *N.J.* at 391, 431 *A.*2d 833.

■ Resolution of such questions calls for "the most thorough and careful review to guard against the encroachment of one co-equal branch of government on another." *Commc'ns Workers of Am., supra,* 130 *N.J.* at 457, 617 *A.*2d 223. Nevertheless, "[w]e ordinarily do our very best to harmonize our constitutional powers with the apparently conflicting will of the Legislature." *In re Hearing on Immunity for Ethics Complainants,* 96 *N.J.* 669, 677, 477 *A.*2d 339 (1984).

## V.

■ In respect of the "legitimacy of the governmental purpose," the Act is one of the Legislature's many attempts to preserve and enhance the public's confidence in government and its civil servants. The ACPE concedes as much. Indeed, "[t]here can be no equivocation on the point that the New Jersey Conflicts of Interest Law . . . vitally serves a significant governmental purpose." *Knight, supra,* 86 *N.J.* at 391, 431 *A.*2d 833; *see also N.J.S.A.* 52:13D–12(a) (noting need for public employees to "hold the respect and confidence of the people"); *N.J.S.A.* 52:13D–12(b) (Act aims "[t]o ensure propriety and preserve public confidence"). As we have observed, "[c]onfidence in government depends to a large extent on confidence in the honesty and integrity of its employees." *In re Petition for Review of Opinion No. 569,* 103 *N.J.* 325,

331, 511 *A*.2d 119 (1986). The Act endeavors to buoy that confidence.

Regarding *Knight's* second prong—"the nature and extent of [the statute's] encroachment upon judicial prerogatives and interests"—we do not find *N.J.S.A.* 52:13D–17 to be an improper infringement of the Judiciary's interests. The restrictions imposed by the Act do not interfere with the Judiciary's authority to administer the courts or regulate the bar. Despite the conflict between *N.J.S.A.* 52:13D–17 and *RPC* 1.11, the separation of powers doctrine is not debased. Rather, the Legislature merely sought to establish, within its prerogative, ethical guidelines for all State employees—attorneys and non-attorneys alike—and instill confidence in the public concerning the virtue of our State's civil servants.

Van Dalen and Brower, as attorneys formerly employed by the State, are subject to both the ethical standards established by this Court and to whatever additional, applicable restrictions are imposed by the Legislature. *See In re Opinion 621, supra,* 128 *N.J.* at 582, 608 *A*.2d 880 (observing that, for lawyers, Act's mandates "are in addition to" RPCs). We agree with the Public Advocate that an exemption for attorneys from *N.J.S.A.* 52:13D–17, which is a statute of general application, would be incongruous with the State's strong policy of ensuring uniformly high ethical standards designed to stimulate public confidence in our civil servants. Therefore, in the interest of comity, we hold that the restrictions imposed by *N.J.S.A.* 52:13D–17 on all former State employees are equally applicable to attorneys and need not yield to the conflicting commands of *RPC* 1.11. Here, accommodation of the Legislature is "compatible with the judiciary's core goals and further[s] our common mission to give the State good and responsible government." *In re P.L. 2001, Chapter 362, supra,* 186 *N.J.* at 390, 895 *A*.2d 1128.

## VI.

Our duty is to interpret the New Jersey Constitution and apply it to the present conflict between coordinate branches of

government in a realistic and practical manner. "In so doing, we attempt to lay down no general 'guidelines' covering other situations not involved here, and attempt to confine the opinion only to the very question[ ] necessary to decision of the case." *Commc'ns Workers of Am., supra,* 130 *N.J.* at 463, 617 *A.*2d 223 (quotation omitted). On the question presented, because *N.J.S.A.* 52:13D–17 serves a legitimate governmental purpose and because its encroachment on judicial prerogatives is not improper, we defer to the Legislature and hold that attorneys formerly employed by the State must comply with the post-employment strictures of both *N.J.S.A.* 52:13D–17 and *RPC* 1.11.

In view of that holding, we refer this matter to the Professional Responsibility Rules Committee for a reevaluation of *RPC* 1.11 and direct the Committee to draft, for the Court's consideration, a proposed rule in harmony with *N.J.S.A.* 52:13D–17.[1]

We reverse the ruling of the ACPE.

Justice RIVERA–SOTO, dissenting.

In unambiguous terms, the New Jersey Constitution makes clear that "[t]he Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted." *N.J. Const.* art. VI, § 2, ¶ 3. In the exercise of that exclusive grant of jurisdiction, we have made clear that "[n]either the Legislature nor the Executive has any power to overrule attorney ethical standards promulgated by this Court[,]" reasoning that, "[u]ltimately, it is the Court that establishes the ethical standards to which an attorney is held, and neither the Legislature nor the Executive can diminish them." *In re Advisory Comm. on Prof'l Ethics Opinion No. 621,* 128 *N.J.* 577, 591, 608 *A.*2d 880 (1992).

---

[1] In the interim, however, we note that former federal government attorneys must continue to comply with the mandates of *RPC* 1.11 only and need not adhere to the more restrictive requirements of the Act.

In this case, we are called on to determine which standard of conduct applies—either the Conflict of Interest Law, *N.J.S.A.* 52:13D–12 to –27, or *Rule of Professional Conduct* 1.11(c)—when the two are in obvious conflict. Acknowledging this Court's supremacy in the area of the regulation and discipline of attorneys, the majority nevertheless concludes that, "[b]ecause *N.J.S.A.* 52:13D–17 serves a legitimate governmental purpose and does not improperly encroach on judicial interests, [the majority] defer[s] to the Legislature in the spirit of comity and hold[s] that attorneys formerly employed by the State must comply with both the [Conflict of Interest Law] and the *RPCs.*" *Ante,* 192 *N.J.* at 48, 926 A.2d at 840 (2007).

This Court adopted *RPC* 1.11(c) in the face of the prohibitions already extant in the Conflict of Interest Law and nothing has been advanced as having arisen during the interim to justify the invocation of comity at this juncture. Thus, unless we are to confess error, there is no reason to supersede a *Rule of Professional Conduct* that was adopted in the face of the pre-existing statutory prohibition. I, therefore, respectfully dissent.

I.

Since 1971, the Conflict of Interest Law has provided, in relevant part, that

[n]o State ... employee ... subsequent to the termination of his office or employment in any State agency, shall represent ... members of the public ... whether by himself or through any partnership, firm or corporation in which he has an interest ... in connection with any cause, proceeding, application or other matter with respect to which such State ... employee ... shall have ... been otherwise substantially and directly involved at any time during the course of his office or employment.

[*N.J.S.A.* 52:13D–17.]

Against that backdrop, and thirty years *after* the Conflict of Interest Law was adopted, this Court undertook a comprehensive review of the *Rules of Professional Conduct.* We described that process in detail:

In January 2001, the Supreme Court created an *ad hoc* Commission on the Rules of Professional Conduct. .... The Court directed the Commission to review the

existing Rules of Professional Conduct in light of the work of the American Bar Association's Commission on Evaluation of the Rules of Professional Conduct (the "Ethics 2000 Commission").....

During the ensuing twenty-two months, the Commission—familiarly known as the "Pollock Commission"—met in subcommittees and plenary sessions. It conducted public hearings on the issues before it. In December 2002, the Commission filed a comprehensive report with the Court. The report was published for comment. Given the importance of the issues addressed in the Commission's recommendations, the Court provided for an extended comment period.... Responses were received from the New Jersey State Bar Association, the Attorney General's Division of Law, the New Jersey Office of Government Integrity, the Pennsylvania and Philadelphia Bar Associations, the New Jersey Lawyers' Fund for Client Protection, the Office of Attorney Ethics, and several individuals.

On April 23, 2003, the Supreme Court conducted a public hearing on the reports of the Pollock Commission and the *Ad Hoc Committee on Bar Admissions*. In addition to some of those who had provided written comments, a representative of the Attorney General's Division of Criminal Justice participated. The Court invited the Commission to reply to the comments that had been made.

The Commission's comments completed the record. In reviewing each recommendation of the Pollock Commission, the Court considered the proposal in the context of the language of and policies underlying the existing Rules of Professional Conduct, pertinent case law, and the comments that had been submitted. During the review process, the Court developed a deep appreciation for the amount of time and effort that the Commission and its staff devoted to their assignment. Although the Court did not adopt every recommendation of the Commission, its decisions were solidly grounded in the knowledge that the Pollock Commission had given all of the issues confronting it both thoughtful and detailed consideration.....

. . . .

Among the Court's actions are the following:

. . . .

4. Codified in RPC 1.11 the existing policy of the Office of the Attorney General that prohibits former government lawyers from serving certain clients for six months immediately following the termination of the lawyer's government service[.] [Supreme Court of New Jersey, "Administrative Determinations in Response to the Report and Recommendation of the Supreme Court Commission on the Rules of Professional Conduct" (Sep. 10, 2003) (Administrative Determinations), *reprinted in* Kevin H. Michels, *New Jersey Attorney Ethics—The Law of New Jersey Lawyering* 1143–44 (2007).]

## II.

It was in that context—one where a commission was appointed, public hearings were held, a "comprehensive report" was submitted, the opportunity for meaningful comment was provided, signifi-

cant comments were in fact received and evaluated, and this Court held its own public hearing—that *RPC* 1.11 was significantly amended. In addition to codifying the Attorney General's policy of a six-month bar of a former government lawyer representing private clients "when the interests of the private party are materially adverse to the appropriate government agency," *RPC* 1.11(a)(3), the Pollock Commission recommended, and this Court adopted, new *RPC* 1.11(c). It provides that, even if a former government lawyer is disqualified pursuant to *RPC* 1.11(a) or (b), the former government lawyer's law firm is *not* disqualified "if: (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom, and (2) written notice is given promptly to the appropriate government agency to enable it to ascertain compliance with the provisions of this Rule." *RPC* 1.11(c). In doing so, this Court specifically noted that "[t]he Commission also favored screening to prevent the attribution of personal conflicts to a lawyer who has served as a government lawyer or public officer and, therefore favored the adoption of the ABA Commission's proposed MRPC 1.11 with some modification." Administrative Determinations, *supra*, reprinted in Michels, *supra*, at 1159. The Court adopted those recommendations and *RPC* 1.11(c), effective January 1, 2004, came into being.

Four years later, and invoking principles of comity, the majority now overrules *RPC* 1.11(c) insofar as it provides a safe harbor for those law firms that hire former government lawyers. Comity, however, is not a mandatory concept. We recently explained that " '[c]omity is practiced when a court of one jurisdiction voluntarily restrains itself from interfering in a matter falling within the purview of a court of another jurisdiction[,]' a concept 'grounded in notions of accommodation and good-neighborliness [that] is a necessary expedient to preserve the delicate balance of power and harmonious relations among the various sovereigns of our federalist system[,]' " *Vergopia v. Shaker*, 191 *N.J.* 217, 238 n. 3, 922 *A.*2d 1238 (2007) (Rivera–Soto, J., dissenting) (quoting *Thompson v. City of Atl. City*, 190 *N.J.* 359, 382, 921 *A.*2d 427 (2007)).

If there was a time for this Court to "voluntarily restrain[ ] itself from interfering in a matter falling within the purview of" the Legislature, that time has passed: it was in September 2003, when this Court adopted *RPC* 1.11(c). It must be underscored that the adoption of *RPC* 1.11(c) was neither by inadvertence, nor by happenstance, nor as an afterthought. As noted, a two-year-long exhaustive process for the revamping of our *Rules of Professional Conduct* was undertaken. That process included the appointment of a blue-ribbon commission; the holding of public hearings; the receipt of comments; the presentation of a "comprehensive" report; an additional public hearing and comment before this Court; and the issuance of detailed Administrative Determinations. These steps demonstrate beyond question that the adoption of *RPC* 1.11(c) was the result of both a deliberate and deliberative effort to "favor[ ] screening to prevent the attribution of personal conflicts to a lawyer who has served as a government lawyer or public officer" and, within limits, to bring New Jersey's disciplinary system in line with the American Bar Association's ethical updates. Administrative Determinations, *supra*, reprinted in Michels, *supra*, at 1159.

Stated differently, nothing—absolutely nothing—has been presented to this Court to justify reneging on the common sense provisions of *RPC* 1.11(c). Nothing—absolutely nothing—has been tendered to demonstrate that the rationale that supported the adoption of that *Rule* is no longer valid. Nothing—absolutely nothing—has been presented to show that the *Rule* is somehow deficient in its application. Nothing—absolutely nothing—has been offered to justify deference today when we affirmatively chose to act four short years ago. Because the *Rules of Professional Conduct* are "a road map for the conduct of attorneys to guide them in their relationships with their clients, other attorneys, the courts, and the public[,]" *In re Greenberg,* 155 *N.J.* 138, 152, 714 *A.*2d 243 (1998), the adoption and later repeal of *Rules* on which lawyers and clients have relied are to be done in limited circumstances and then only for the best of reasons. In the

absence of any reasons for our actions today, they appear arbitrary.

### III.

The Advisory Committee on Professional Ethics concluded that "the [Conflict of Interest Law] is more restrictive and the Court's ethics rule in *RPC* 1.11(c) is more liberal, allowing attorneys to proceed in proper cases by screening and notification." *Advisory Comm. on Prof'l Ethics Opinion No. 705*, 184 *N.J.L.J.* 390 (May 15, 2006). It thus concluded that "the Court's ethics rule should prevail in this case, absent a decision by the Court to defer to the statute under principles of comity." *Ibid.* Relying on nothing in this record, the Court has determined to invoke comity and provide that the Conflict of Interest Law trumps *RPC* 1.11(c). I cannot agree. For the reasons expressed above, I respectfully dissent.

*For reversal*—Chief Justice ZAZZALI and Justices LaVECCHIA, ALBIN, WALLACE, and HOENS—5.

*For affirmance*—Justice RIVERA–SOTO—1.